# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

STEVEN CHAMBERS,

-And-

KIM CHAMBERS

Plaintiffs,

v.

**SHEPPARD PRATT HEALTH SYSTEM**
6501 N. Charles St.
Towson, MD 21204
**ALSO SERVE ON:**
Treasurer of Maryland
**c/o Joyce A. Miller**
Director of Insurance
State Treasurer's Office
80 Calvert Street Rm 442
Annapolis, MD 21401
phone 410-260-7929
fax 410-974-2865

-AND-

Harsh K. Trivedi, MD, President and CEO
6501 N. Charles St.
Towson, MD 21204
*In his individual and professional capacity,*

-AND-

Todd Peters, MD, Vice President/Chief Medical
Officer
6501 N. Charles St.
Towson, MD 21204
*In his individual and professional capacity,*

-AND-

Karen Robertson-Keck, Vice President, Human
Resources
6501 N. Charles St.
Towson, MD 21204
*In her individual and professional capacity,*

**Civil Action No.  1:24-cv-02316**

JURY TRIAL DEMAND

1

-AND-                                              :
                                                   :
HEIDI KENDALL                                      :
6501 N. Charles St.                                :
Towson, MD 21204                                   :
*In her individual and professional capacity,*     :
                                                   :
                                                   :
Sarah Norman                                       :
6501 N. Charles St.                                :
Towson, MD 21204                                   :
*In her individual and professional capacity,*     :
                                                   :
                                                   :
-AND-                                              :
                                                   :
Fernando, (Ricky) Santico
6501 N. Charles St.
Towson, MD 21204
*In his individual and professional capacity,*

                        Defendants.

---

## COMPLAINT

Plaintiffs, STEVEN CHAMBERS ("Mr. Chambers") and his wife Kim Chambers, by and through his attorneys, Daniel L. Cox, The Cox Law Center, LLC, and for his COMPLAINT against Defendants, SHEPPARD PRATT HEALTH SYSTEM ("Shephard Pratt"), Harsh K. Trivedi ("Trivedi"), Todd Peters ("Peters"), Karen Robertson-Keck ("Robertson-Keck"), Sarah Norman ("Norman"), Heidi Kendall ("Kendall") and Fernando "Ricky" Santico ("Santico"), states as follows:

### VENUE AND JURISDICTION

1.     On May 24, 2024 the Equal Opportunity Employment Commission, Philadelphia Unit, issued to Plaintiff, a Glen Burnie resident where he had been employed remotely, its "Determination and Notice of Rights" form, also known as the "Right to Sue" letter, signed by EEOC representative Rosemarie Rhodes, Director. Venue and jurisdiction are therefore appropriate on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331.

### PARTIES

2.     Plaintiff, Steven Chambers, was at all times relevant an employee of Maryland's

2

Sheppard Pratt Health System as the remote Program Director of Homeless Veterans Reintegration Program (HVRP) at his home located at 208 4th Ave. S/W, Glen Burnie, MD 21061.

3. Plaintiff Kim Chambers, is the wife of Steven Chambers living at the same address.

4. Defendant, **SHEPPARD PRATT HEALTH SYSTEM** is a State of Maryland mental health care facility located in Baltimore County, which employs more than fifteen employees and had direct supervisory and employment authority over plaintiff Mr. Chambers.

5. At all times relevant, Defendant Harsh K. Trivedi, M.D., President and CEO, had direct supervisory and employment authority over plaintiff Mr. Chambers.

6. At all times relevant, Defendant Todd Peters, M.D., Vice President and Chief Medical Officer, had direct supervisory and employment authority over plaintiff Mr. Chambers.

7. At all times relevant, Defendant Karen Robertson-Keck, the Vice President of Human Resources, had direct supervisory and employment authority over plaintiff Mr. Chambers.

8. At all times relevant, Defendant Sarah Norman, Plaintiff's supervisor, had direct supervisory and employment authority over plaintiff Mr. Chambers.

9. At all times relevant, Defendant Heidi Kendall, human resources officer, had direct supervisory and employment authority over plaintiff Mr. Chambers.

10. At all times relevant, Defendant Fernando "Ricky" Santico, human resources officer, had supervisory and employment authority over plaintiff Mr. Chambers.

## COMMON ALLEGATIONS

11. Defendant SHEPPARD PRATT is a "person" within the meaning of §42 U.S.C, 2000e(a) and an employer as contemplated by §42 U.S.C, 2000e(b).

3

12.     Plaintiff Mr. Chambers was Defendant SHEPPARD PRATT'S "employee" as contemplated by §42 U.S.C. 2000e(f).

13.     Defendants TRIVEDI, PETERS, ROBERTSON-KECK, NORMAN, KENDALL AND SANTICO were SHEPPARD PRATT'S "employees" as contemplated by §42 U.S.C. 2000e(f).

14.     Defendants TRIVEDI, PETERS, ROBERTSON-KECK, NORMAN, KENDALL AND SANTICO were managerial employees and agents of Defendant SHEPPARD PRATT and as such had managerial and supervisory authority over Mr. CHAMBERS in his capacity as the employee of SHEPPARD PRATT and had the authority to make hiring and firing decisions as it related to Mr. CHAMBER'S employment with SHEPPARD PRATT.

15.     As a managerial and supervisory employee and agents of Defendant SHEPPARD PRATT, Defendants TRIVEDI, PETERS, ROBERTSON-KECK, NORMAN, KENDALL AND SANTICO participated in and had full knowledge of the unlawful actions of Defendant SHEPPARD PRATT towards Mr. CHAMBERS, and under the scope of employment, engaged in and/or otherwise permitted the forgoing conduct as set forth below.

### STEPHEN CHAMBER'S  EMPLOYMENT AS MARYLAND'S HOMELESS VETERAN'S REINTEGRATION PROGRAM PROJECT MANAGER

16.     MR. CHAMBERS AVERS THE FOLLOWING FACTS AND TARGETED DISCRIMINATION AND RETALIATION BY DEFENDANTS FOR HIS RELIGIOUS BELIEFS:

17.     Mr. Chambers is a United States Army Specialist veteran who served his country honorably in the First Division and went on in civilian life to work for the State of Maryland serving needy veterans, earning an approximately $50,000 annual salary, plus benefits.

18.     On or about October 6, 2008 Plaintiff began work for Defendant Shephard Pratt as a Veterans Employment Retention Specialist and was soon promoted to project manager for the

4

same, serving in the position of Project Manager for the State of Maryland's "Homeless Veteran Reintegration Program" for nearly 14 years.  He is well loved, has a humble servant's heart out of love for God and his fellow servicemen and women, and has always had a special connection with veterans in need.  He has been an integral part of our State's low homeless veterans rate.

19.    Much of his job duties were always remote, with most of the job duties being done by telephone, e-mail, and computer meetings via Skype or similar video conferencing.  By 2021 during "COVID-19" he was 100% remote as was much of his agency and most State offices.

20.    On or about August 20, 2021 Plaintiff received a message by e-mail from Sheppard Pratt, signed by Harsh K. Trivedi, M.D., President and CEO, and Karen Robertson-Keck, Vice President, Human Resources, that all employees including remote workers will have to be vaccinated with their first COVID-19 vaccine by September 1, 2021.  The e-mail stated that they are working on a process by which employees who receive the COVID-19 vaccine may submit proof of the same.  This communication included the false statement that "Governor Hogan shared his latest COVID-19 order that mandated vaccination for all employees across a number of state entities and hospitals, congregate settings, and nursing homes.  Employees must show proof of vaccination, with at least their first shot, by September 1…Following this order, we are requiring **all employees** regardless of location, and including remote workers, to have their first vaccine by September 1…".  This was false because the Governor's order did not require all employees to be vaccinated with a COVID-19 vaccine, but contained exceptions.  The e-mail did include detailed assurances that "requests for bona fide medical or religious exemptions should be directed to Employee Relations: Lauren Rosecrans at [e-mail]."  **Exhibit One, attached hereto.**

21.    On or about that same day of August 20, 2021, another e-mail from Karen Robertson-Keck and Todd Peters, M.D. included the false and discriminatory statement that "consistent with

5

the Governor's mandate we are requiring **all employees** to…have their first vaccine dose by September 1." This was false because the Governor's order did not require all employees to be vaccinated with a COVID-19 vaccine, but contained exceptions. Additional detailed assurances that "employees who received an approved, bona fide medical or religious exemption will be allowed to continue working unvaccinated," while being required to obtain regular COVID-19 testing and appropriate COVID preventative measures. **Exhibit Two, attached hereto.**

22.     With that e-mail on August 20, 2021 was included a Sheppard Pratt letterhead policy form called "Vaccine Mandate Frequently Asked Questions" which included on page 2 the promise "To request a religious or medical exemption form, please contact Lauren Rosecrans at [e-mail]…Employees [that] received an approved medical or religious exemption…[must submit to] regular COVID-19 testing in lieu of vaccination." **Exhibit Three, attached hereto.**

23.     On or about August 23, 2021 at 11:36 a.m., Plaintiff Steven Chambers e-mailed Lauren Rosecrans from his official state e-mail account as directed with a subject line "Request Religious Exemption Form" and stated, "Hello Lauren, I am requesting a religious exemption form to exempt me from the Covid vaccine. Thank you. Steven Chambers, Project Manager, Homeless Veteran Reintegration Program, Sheppard Pratt, Cell: [], E-mail []." Ms. Rosecrans responded to Plaintiff's e-mail that same day only four minutes later at 11:39 a.m., with the response: "Good morning – we are in the process of finalizing our exemption forms. I will get it over to you as soon as it's approved. Thanks! Lauren Rosecrans, Director of Employee Relations, Sheppard Pratt." **Exhibit Four, attached hereto.**

24.     On that same date of August 23, 2021, concerned about the upcoming September 1, 2021 deadline and not wanting to delay, plaintiff Mr. Chambers submitted to Lauren Rosecrans a two page, single-spaced and signed letter for religious exemption detailing his reasons why he

6

was submitting a religious exemption from the COVID-19 vaccine which stated:

"August 23, 2021, Lauren Rosecrans, Sheppard Pratt, [address].  Dear Lauren Rosecrans, Sheppard Pratt has informed me that they require me to get vaccinated with a COVID-19 vaccine by September 1, 2021.  Due to my sincerely religious beliefs, I cannot receive a COVID-19 vaccine, as it would violate those beliefs.  All of the currently available COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or testing.  As a Christian, I believe and have held my entire life, that life begins at conception and ends at natural death.  The Bible gives many examples, some being:

The Scriptures reveals and states that God knows us even before we are conceived.  See Jeremiah 1:4-5. ("Then the word of the Lord came unto me, saying, 'Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee a prophet [to] the nations.").  God's creative powers are awesomely at work while we are still in utero.  See Psalm 139:13-16. ("For thou hast possessed my reins: thou hast covered me in my mother's womb.  I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works: and that my soul knoweth right well.  My substance was not hid from thee, when I was made in secret, and curiously wrought in the lowest parts of the earth.  Thine eyes did see my substance, yet being unperfect; and in thy book all my members were writ, which in continuance were fashioned when as yet there was none of them.").  I firmly believe my body is the temple of God.  1 Corinthians 6:19 states ("What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own.").

The Christian Church condemns the killing of infant(s), which is called abortion, while in the womb of their mother – from earliest times.  The early Christian community's conduct code, call[ed] The *Didache*, dated sometime around 70 AD agrees with Scripture, stating: "Do not abort a fetus of kill a child that is born."  Leb Edition of the Apostolic Fathers (also translated as, "Thou shalt not murder a child by abortion nor kill that which is begotten.").  In 1777 AD, *A Plea for Christians*, written by Athenagoras, stated, "We say that those women who use drugs to bring on abortion commit murder, and will have to give an account to God for the abortion."  Tertullian wrote in his *Apologeticum*, of 197 AD []: "Murder being once for all forbidden, we [Christians] may not destroy even the fetus in the womb,…".

I am sincere in stating [] that my religious beliefs that abortion is murder violates one of the Ten Commandments, ("Thou shall not kill." Exodus 20:13).  For this reason, [the vaccine mandate] violates my sincerely held religious beliefs to comply or agree with abortion in **any form**.  The COVID-19 vaccines were developed or tested using cell lines that were generated or derived from tissues of aborted fetuses. J&J [Johnson & Johnson] used an aborted fetal cell line in manufacturing its COVID-19 vaccine, while Moderna and Pfizer used aborted fetal cell lines in their testing of the efficacy of their vaccines.  See James Lawler, M.D.  "You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells".  Nebraska Medicine, August 4, 2021, [online medical journal link].  Therefore, due to my strong religious beliefs, being vaccinated with any of the currently available COVID-19 vaccines, I would be complying or agreeing with abortion, which is the end of an innocent human life which is a sin against my God, in violation of His

7

Ten Commandments, implying I would be held morally accountable by my God and His consequences. For the above-mentioned statements and reasons, I am requesting a religious exemption, under Title VII and any similar Maryland state law(s), that will excuse me from having to receive a COVID-19 vaccine. I also request that no adverse employment action be taken against me on account of my religious beliefs. Thank you for your time and consideration. Sincerely, Steven Chambers, 8/23/21 (signature), Steven L. Chambers."

**Exhibit Five, attached hereto.**

25.     On or about later that day on August 23, 2021, Mr. Chambers received from Lauren Rosecrans a two-page document from Sheppard Pratt titled "Religious Exemption from COVID-19 Vaccine Form" which states errantly and with religious bias and prejudice several illegalities including, but not limited to, 1) "if you have a sincerely held religious belief…you **must** complete this form…; 2) "…**requests** for religious exemption[]…**approval** is not guaranteed…"; 3) required him to disclose whether he was opposed to "all vaccines" – a HIPAA health violation and irrelevant to the "COVID mandate"; 4) "in some cases…we may need to obtain additional information and/or documentation about your religious practices or beliefs…with your religion's spiritual leader (if applicable) or religious scholars to address your **request** for an exemption…"; 5) "I verify…misrepresentation…may result in…termination…[and] my **request** for an exemption may not be granted if **it** is unreasonable or if it creates an undue hardship for Sheppard Pratt"; 6) "FOR RELIGIOUS/SPIRITUAL LEADER: "I____…hereby certify that the avove information [of Mr. Chambers] **who is a member of my religious organization**, is accurate…signed, date, printed name." **Exhibit Six, attached hereto (emphasis added).**

26.     Even though this "form" was illegal and unconscionably intrusive into Mr. Chamber's privacy and private religious affairs, including its false claim to have some kind of state power to overrule his religious beliefs and deny the same if "unreasonable" to the state or failed to certify that he was actually a member of a religious organization, Mr. Chambers – without waiving his constitutional rights – complied with the filling out of the form, obtaining his pastor's signature

8

and certification even though illegal to have been required to do so, and uploaded the same in a timely fashion.

27.     The Sheppard Pratt "Religious Exemption" form required Mr. Chambers to give *another* statement of his religious beliefs in addition to his letter, to wit he wrote: "I hold my religious beliefs to my God very strong in my life.  I have believed in the Scriptures of the bible, which I have attached, that the covid shot uses aborted fetal cell lines in their testing of the efficacy of their vaccines.  Due to my strong religious beliefs, I object to this covid vaccine." *Id.*

28.     The same "form" required a pastor "certification" was filled out as well by Mr. Chambers' pastor at "Fellowship Baptist Church of Ferndale" with the pastor's signature "Michael W. Hubers, Sr. Pastor, August 23, 2021, printed name: Michael W. Hubers, Sr.".  *Id.*

29.     On or about that same day, August 23, 2021, Mr. Chambers uploaded his religious exemption notice and declaration with the Sheppard Pratt forms and pastor certification to the Sheppard Pratt State of Maryland online "survey" database as required by his supervisors with all questions answered including "Exempt," receiving a receipt of the same from Sheppard Pratt. **Exhibit Seven, attached hereto.**

30.     The following day, on or about August 24, 2021 at 9:07 a.m. by Karen Robertson-Keck, VP, and again at 9:19 a.m. in a forwarded e-mail by Heidi Kendall, Sheppard Pratt issued an e-mail and a forward of the same with a note to Sheppard Pratt employees appearing to address "vaccine hesitant" employees including those employees with "any heartburn" about getting the COVID-19 vaccine.  That e-mail and forward stated again that "employees who receive an approved, bona fide medical or religious exemption will have regular COVID-19 testing."  It further stated in the forwarded e-mail that "regarding the COVID vaccination expectations…additional guidance [will be] shared this week…please feel free to chat with me so

9

I can help…".  **Exhibit Eight, attached hereto.**

31.    On or about August 26, 2021 Heidi Kendall sent an e-mail stating that unvaccinated staff are to schedule their first shot by September 1, 2021 and that unvaccinated staff should "wear a face mask while at work" which Mr. Chambers was already complying with.  She went on to state that employees in their own personal office space could remove their masks.  No mention of medical or religious exemptions were provided.

32.    On or about August 27, 2021 Heidi Kendall sent another e-mail stating that all staff must upload their vaccination card to the state database and obtain their vaccination information from the state APP called MyIR.  She went on further to instruct that medical and religious exempt employees must write in that they are "declining the vaccine and pursuing medical/religious exemption."  She further stated that anyone not answering the database questions would be able to be identified and would suffer progressive discipline up to and including termination.  She admits that staff may have "extreme hesitancy with this" requirement and if so, to contact her.  Mr. Chambers found this e-mail intimidating and threatening since he had already submitted his exemption and the e-mail was implying he could be terminated.

33.    From August 23, 2021 onward, Plaintiff had reason to believe that his religious exemption and accommodation from the COVID-19 vaccination requirement was recognized by Sheppard Pratt because he was considered compliant with the requirement on September 1, 2021.

34.    Other than the computer exemption upload receipt on August 23, 2021 and his certified compliance with the same stating he was "exempt", on information and belief, Sheppard Pratt failed to "notif[y] [Mr. Chambers], in writing, if an exemption has been **granted or denied**."

35.    However, out of the blue on October 6, 2021 Mr. Chambers received an e-mail requesting a formal video meeting on behalf of the vice president of Human Resources at Sheppard

10

Pratt, Karen Robertson-Keck, his brand-new assigned supervisor Sarah Norman whom he had never met before, and an HR officer named Fernando "Ricky" Santico, who sat watching Mr. Chambers in an intimidating manner as if Mr. Chambers had done something wrong which he had not.

36.     On October 7, 2021, forty-five days after Mr. Chambers was granted his religious exemption and thirty-seven days after the so-called September 1, 2021 "deadline" to obtain a COVID-19 vaccine, Mr. Chambers attended the Skype meeting at 11:00 a.m. with Karen Robertson-Keck, Sarah Norman and Fernando "Ricky" Santico.  Ms. Robertson-Keck stated to Mr. Chambers that: "Sheppard Pratt will not honor any religious exemptions.  Our stance is that we trust that all of our employees have sincere religious convictions and we respect that, with no question.  The organizational stance however on being unvaccinated and having client-facing jobs does add an additional risk.  The organization has made the conclusion that we are not able to grant **_any_** exemptions to anyone with client-facing positions and who don't have a match [substitute]; we are not able to grant the religious exemption.

37.     Mr. Chambers understood and knew that he was being discriminated against because of my religious beliefs, as there were others who had been granted exemptions from the COVID-19 vaccine, but now over a month later his religious exemption was being overturned and denied for no reason.  At no time did Sheppard Pratt recognize his religious faith but instead equated his faith to all other employees of faith, many of whom were taking the vaccine.  This put him in a different light and position than other employees and was extremely embarrassing and humiliating. It seemed that Sheppard Pratt only allowed "good employees" faith which it approved, which allowed the employee to take the COVID-19 vaccines.  But religious faith that was exempt was denied, disfavored, discriminated against and then retaliated against – and Mr. Chambers was

11

subjected to the same by Defendants.

38.     During this Skype meeting on October 7, 2021, **Sarah Norman, Mr. Chambers direct supervisor, repeatedly kept stating to him arrogantly and with intimidation, "Just take the vax, Steve, just take the vax."**  When Mr. Chambers explained that he had a true and bona fide religious belief objection to the same and **that he could not in good conscience compromise those beliefs**, SARAH NORMAN told him again in front of his peers in this meeting, "**Steve, just take the vax.**"  **They said they would give Mr. Chambers some time to "think about" what they had threatened, and if he continued to refuse the vaccine for religious reasons, he would be terminated.**

39.     At the end of the October 7, 2021 shake-down meeting threatening him with termination for his religious exemption, Mr. Chambers asked "So the sole reason I am being laid off is because I won't take the COVID vax? To which Karen with HR said, "Absolutely, Sheppard Pratt does not grant religious exemptions for client-facing workers; we cannot worry about the client's safety.  It is an accommodation that cannot [sic] be granted…".

40.     At no time was Mr. Chamber's job "forward client-facing" as his supervisors were falsely claiming.  He was an at-home remote employee 100% of the time and was managing large case loads entirely via telecommunications and Skype, which was working just fine, as were most of the State administration and Sheppard Pratt employees including the ones who terminated him.

41.     In any case, the false claim was belied by the statement of Karen Robertson-Keck to Mr. Chambers that no religious exemptions were being recognized by the Sheppard Pratt state hospital *at all*.  This in light of the fact that medically exempt workers were recognized and allowed to work, and the so-called written policy claiming Sheppard Pratt would recognize "bona fide" religious exemptions for accommodations.  However, it was then understood by Mr. Chambers

12

that this so-called offer for religious exemption recognition and accommodation provided to him for over 51 days was being withdrawn by Defendants without any justification but solely because he was a Christian who objected to abortion and fetal cell lines being used in the vaccines development, testing and/or ingredients.

42. On October 13, 2021, 51 days after Mr. Chambers' religious exemption was uploaded, received and recognized by Sheppard Pratt and Defendants, Defendants terminated him from employment because of his refusal to take the COVID-19 vaccination. **Exhibit Nine, attached hereto.**

43. The termination letter is dated October 13, 2021 and is signed by Karen Robertson-Keck, Vice President of Human Resources, and is on official Sheppard Pratt letterhead. Copied in the "cc" is "Sarah Norman." *Id.*

44. In or about that time in 2021 when he was being told he would be terminated from employment because he would not take the COVID-19 vaccine, his new supervisor Sarah Norman, told him with great arrogance and intimidation, causing anxiety and extreme emotional pain and suffering, "**Steve, maybe we will keep you around for another six months**" because the Defendants were without a replacement and desired that even though Mr. Chambers was terminated, they wanted him to help train his replacement, making him feel similar in his job termination from his 14 year career like he was dealing with a taunting, tyrant regime – like those which require prisoners to dig their own graves before they are executed.

45. Mr. Chambers was terminated by Defendants expressly with the statement that his religious exemption was unable to allow him to meet face to face with anyone, making him out to be a religious "unclean" person, unable to function in modern society and someone whom Defendants believed must be eradicated from state and public square work because of his religious

13

beliefs. This outrageous attack on his person, his dignity and his faith caused Mr. Chambers severe and significant damages, including sickness, depression, feelings that he was unclean and unable to be around anyone and the understanding that he was ostracized from society because he was considered a religious "unapproachable" – not allowed to work for the state of Maryland anymore as a Christian who believed in God, in his country and in loving his neighbor. Instead, Defendants made him out to be a hateful person who did not care about anyone because he refused to "just get the vax, Steve" because his faith could not be compromised. He was disdained because he was a man of principle and unwilling to give up his religious faith in the face of outrageous and extreme behavior and intimidation and threats to his livelihood and career by Defendants.

46.     From October 13, 2021 onwards, Defendants speciously kept Mr. Chambers employed because they had no other options to care for veterans, all while telling him he was being terminated, tormenting his ability to feel equal, welcome and respected among his peers at his long-held state job.

47.     In or about that time, Sarah Norman, with an arrogant mocking tone, offered to host a "goodbye party" for Mr. Chambers for his 14 years of service to the State of Maryland and our veterans. He politely declined because he knew it was her intent to spread about that he was being terminated because of his COVID-19 vaccination status and religious exemption being denied.

48.     Then again on October 21, 2021, Sarah Norman sent Mr. Chambers an e-mail offering to host a staff "goodbye party" for Mr. Chambers – to rub in his face and spread about the entire state veterans' assistance programs and employees at Sheppard Pratt that he was being terminated. Mr. Chambers, feeling targeted for retaliation and intimidation and humiliation, politely declined again. However, Sarah Norman, on information and belief, spread about the agency that Mr. Chambers was being terminated anyway, all in violation of his employee rights

14

and in retaliation for not taking the COVID-19 vaccine.

49.    Months went by with this torment and disfavored status, from October 13, 2021 through January 21, 2022 – without any clarity as to his job security and position and instead with open mockery because Mr. Chambers was being terminated because of his religious exemption. Mr. Chambers became aware and believed he was being kept on for temporary employment after termination just because Defendants were in a job search for a replacement for his position **so that Defendants could keep the grant money he had obtained from the federal U.S. Department of Labor for veterans.** If Defendants had informed the United States that it had terminated Mr. Chambers, the program director, on information and belief the United States would require the entire half-million dollar project to be refunded to the federal government. **So Defendants used Mr. Chambers as a financial tool to cover over their actions and to keep hundreds of thousands of dollars for itself, all while plotting to terminate Mr. Chambers once they had a replacement**.

50.    On January 21, 2022 Heidi Kendall sent an e-mail to the entire state hospital and veteran's team informing everyone that "we are having new staff joining our team who is James Mastrodeomenico," who would be taking Mr. Chamber's place since Mr. Chambers was terminated for his religious exemption. This insult to the staff was a shock to Mr. Chambers.

51.    Adding insult to injury again a month later, Heidi Kendall required the new employee James Mastrodomenico to e-mail Mr. Chambers on February 16, 2022 and ask to meet with Mr. Chambers "face to face" in order to be trained for taking over Mr. Chamber's position as the new project manager. Mr. Chambers was instructed by James Mastrodomenico that he was to meet to train him and to "deep dive into the grant [process] and the operations of the grant" so that the State of Maryland could continue to receive hundreds of thousands of dollars for veteran's relief

15

which Mr. Chambers had ensured was secured for over 14 years.

52.     This outrageous requirement from Heidi Kendall that Mr. Chambers train his own replacement after Defendants had terminated Mr. Chambers because of his religious exemption from the COVID-19 vaccination was enhanced in its vileness by the fact that he was required to meet with James Mastrodomenico for training "face to face" which he obeyed and did, even though he was spuriously told he was terminated because of a so-called state policy that he could not meet face to face with individuals with a religious exemption from the vaccine.  **Exhibit 10, attached hereto.**

53.     The training of his replacement was once again like the tyrannical regimes that makes its oppressed people dig their own graves before they are executed and placed in them, because here he was being made to meet and train with the replacement for his own job which he had done with outstanding success for 14 years for the state of Maryland and our veterans.  After all his service, Mr. Chambers felt and understood that he was being thrown by the wayside and disregarded because of his religious faith and unwillingness to obey the unrighteous and unethical demands of Defendants to "just get the vax Steve" and give up his faith.  He was being placed in high disrepute by Defendants and then was retaliated against and made to train his replacement, who was a "good person" in the State's eyes because he had "gotten the COVID-19 vaccine" regardless of his "faith."  With Defendants, Mr. Chambers knew and understood there was no room for anyone of faith with a religious exemption to work for the state.  He was anathema to Defendants, but he kept his faith towards God even so, demonstrating his bona fides to the death of his job not unlike Christians who have been persecuted in centuries past by tyrants and regimes of dark ignorance.

54.     On or about March 8, 2022 his trainee for his position, James Mastrodomenico, sent

16

an e-mail to Mr. Chambers stating that he was to be trained in formal expenditure reporting in one week and after that, he would take over Mr. Chamber's job at the direction of Defendants. Mr. Mastrodomenico sent this e-mail to the entire team at Sheppard Pratt, and asked them to continue to send all receipts for the veteran's program to Mr. Chambers until further notice.

55.    On or about March 22, 2022 – nearly three weeks later – James Mastrodomenico sent Mr. Chambers an e-mail stating "as we work with HR to get me into a position that will not raise red flags at the [United States] DOL (Department of Labor – the grant authority), a new [job] had to be created." He explained that Defendants were requiring Mr. Chambers to "apply for the new position immediately" so that Defendants can assign Mr. Chambers a new registration number for the grant. Mr. Chambers was then promised that doing this would delay the termination of his salary and benefits only until June 2022 as he was still being terminated – it was just that they did not want to lose the grant from DOL because they were terminating Mr. Chambers who was the grant administrator for Defendants. The "new" job description stated that Mr. Chambers was to "perform individual assessement, planning and implementation in both structured and unstructed settings," with the position being solely community-based out of Mr. Chambers' home with some time allocated between office setting in his home and some "physical activity within the community."

56.    On April 4, 2022, Mr. Chambers signed the letter for the new job because he had no other choice if he wanted to keep his pay until June 2022, and since Defendants were expressly allowing physical time in the community it was clear that they were no longer worried about "client-facing" issues with his religious exemption. Defendants' were specious towards Mr. Chambers, however, and still cut off his pay in June 2022.

57.    On April 6, 2022 Sheppard Pratt sent an e-mail to Mr. Chambers "congratulating"

17

him on his "new position" and stated, however, that he was not being offered a contract to remain employed.  **Exhibit 11, attached hereto.**

58.    On that same date, Sheppard Pratt sent a "revised confirmation letter" of his "new position" along with a job description.  The change was that the "start date" was moved from July 1, 2022 to April 1, 2022, which date had already passed.  Once again, this seemed specious to Mr. Chambers and appeared to be a cover up by the state to both terminate him illegally while taking the veterans' money from the United States improperly without disclosing they had terminated him from the grant administrator program director/manager position and his name that the grant had been awarded to the state under.

59.    Mr. Chambers never received any signed paperwork back with any signatures about this "new position" possibly because Defendants were not willing to sign their names to what they were doing to Mr. Chambers and to the United States.

60.    On June 30, 2022, when the United States Department of Labor grant was complete and a new one was to be applied for, Mr. Chambers was cut off from his state pay and benefits and finally fully terminated from employment for his religious faith in violation of the law of the land and in great harm to him and his family.  He was offered no severance, no reimbursement pay, no front pay or back pay and was instead expected to immediately turn in all his 14-years of work and information to the Defendants so that they could seek a renewal of the grant without his name and administration attached thereto.

61.    Mr. Chamber's was egregiously and grievously violated, causing great stress, hardship, financial loss, emotional distress and great pain and suffering, in the loss of his religious faith and rights under both United States and Maryland law, and under the United States and Maryland Constitutions.

18

62.    Mr. Chamber's illustrious and praised career had just completed his 14th year in this position when he was terminated after being denied his religious exemption from the COVID-19 vaccine.

63.    There were no lawful grounds to terminate Mr. Chambers and the Defendants stand in violation of the law of the land and of the anti-discrimination laws, acting both in concert illegally with the Sheppard Pratt state system and personally outside of state policy, exposing each of the individual defendants to personal liability and tortious judgment under law in favor of Mr. Chambers whom they tormented and from whom they robbed his career and property interest in his salary and benefits all because they mocked and disfavored his religious exemption, falsely claiming he couldn't even work from home with his religious faith.

64.    At all times Mr. Chambers was ready and available to work his job and he was well known for his excellence and his ability to obtain the State of Maryland and veterans here significant grants to assist them and prevent and lower homelessness and veteran suicide.

65.    Mr. Chambers asserts that he was terminated from his employment by Defendants for his religious beliefs in violation of Title VII.

66.    Defendants' false statements to the EEOC in this matter that a religious accommodation would have "unduly burdened" Defendants is a misrepresentation to that administrative body.    There was no "undue hardship" and his remote job was in no way burdensome to the Defendants for him to be accommodated with his religious exemption.

67.    Mr. Chambers avers that the discrimination and retaliation was continuous, pervasive and ongoing, causing him great emotional distress, actual damages and significant pain and suffering, as well as attorney's fees, costs and prospective damages, and has caused he and his wife

19

to suffer significant damages for loss of consortium.

68.     Mr. Chambers received his Right to Sue letter on May 27, 2024 and the instant matter is timely filed as a civil cause of action seeking compensatory, emotional, pain and suffering and punitive damages, as well as attorney's fees and costs of suit.

### Count I – Unlawful Employment Practice in Violation of Title VII of Civil Rights Act of 1964 §42 U.S.C., 2000e-2(a)(1) – Hostile Work Environment because of Religion

69.     Mr. Chambers adopts and realleges the allegations of all paragraphs in this Complaint in Count I as if fully set forth hereinbelow.

70.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, §42 U.S.C., 2000e-2(a)(1).

71.     Mr. Chambers reasserts that he was subjected to unwelcome harassment on a regular and ongoing basis from the summer of 2021 through his termination from employment on October 13, 2021 and on June 30, 2022.

72.     The harassment was because of his religious beliefs after he was required by Defendants' and its policies to submit a religious exemption declaration explaining his faith in order to receive an exemption from the COVID-19 vaccination.

73.     The harassment was so severe and pervasive so as to alter the conditions of the work environment by creating a hostile and abusive environment.

74.     Mr. Chambers, after complaining to his superiors about the unwelcome harassment and video inquisitions about his faith where he was being questioned, Defendants were on notice of the said unlawful employment practices.  Additionally, the harassment was so pervasive and severe that there is a presumption that it came to the attention of Defendants or Defendants' employee authorized to do something about it and thereby put Defendants on notice.

20

75. That Defendants are liable for the hostile work environment through the acts and omissions of its employees and/or agents.

76. The foregoing acts perpetrated against Mr. Chambers by Defendants constitute acts of unlawful employment practice, in violation of §42 U.S.C., 2000e-2(a)(1).

77. As a result of the foregoing unlawful employment practices perpetrated against him by Defendants, Mr. Chambers suffered humiliation, emotional distress, physical pain, suffering and has suffered economic losses, which are a direct and proximate result of the foregoing unlawful employment practices.

78. Mr. Chambers is informed and believes, and thereupon alleges, that the Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Mr. Chambers.  By reason thereof, Mr. Chambers is entitled to the imposition of punitive damages authorized by Title VII of the Civil Rights Act of 1964, amended, in a sum according to proof to be presented at trial.

**WHEREFORE,** Plaintiff Mr. Steven Chambers respectfully requests judgment in his favor and against Defendants, both individually and professionally as agents of Sheppard Pratt, for compensatory damages in an amount to be determined by a jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, re-instatement, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court finds just.

### Count II – Unlawful Employment Practice in Violation of Title VII of Civil Rights Act of 1964 §42 U.S.C., 2000e-2(a)(1) – religious discrimination

79. Mr. Chambers adopts and realleges the allegations of all paragraphs in this Complaint in Count II as if fully set forth hereinbelow.

80. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended,

21

§42 U.S.C., 2000e-2(a)(1).

81.    Mr. Chambers was discriminated against and was subjected to unwelcome harassment on a regular and ongoing basis from the fall of 2021 through his termination from employment on October 13, 2021 and finally on June 30, 2022.

82.    The discrimination was because of his religious beliefs after he was required by Defendants' policies to submit a religious exemption declaration explaining his faith in order to receive an exemption from the COVID-19 vaccination.

83.    The discrimination was so severe and pervasive so as to alter the conditions of the work environment and resulted in his termination because of his religion.

84.    Mr. Chambers, after making report to his superiors about the unwelcome discrimination and video inquisitions about his faith where he was being questioned, Defendants were on notice of the said unlawful employment practices.  Additionally, the discrimination was so pervasive and severe that there is a presumption that it came to the attention of Defendants and an employee authorized to do something about it and thereby put Defendants on notice.

85.    That Defendants are liable for the religious discrimination through the acts and omissions of its employees and/or agents.

86.    The foregoing acts perpetrated against Mr. Chambers by Defendants, constitute acts of unlawful employment practice, in violation of §42 U.S.C., 2000e-2(a)(1).

87.    As a result of the foregoing unlawful employment practices perpetrated against him by Defendants, Mr. Chambers suffered humiliation, emotional distress, physical pain, suffering and has suffered economic losses, which are a direct and proximate result of the foregoing unlawful employment practices.

88.    Mr. Chambers is informed and believes, and thereupon alleges, that the Defendants'

conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Mr. Chambers.  By reason thereof, Mr. Chambers is entitled to the imposition of punitive damages authorized by Title VII of the Civil Rights Act of 1964, amended, in a sum according to proof to be presented at trial.

**WHEREFORE,** Plaintiff Mr. Steven Chambers respectfully requests judgment in his favor and against Defendants, both individually and professionally as agents of Sheppard Pratt, for compensatory damages in an amount to be determined by a jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, re-instatement, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court finds just.

### Count III – Violation of Civil Rights Act of 1964 §42 U.S.C, 2000e-3(a) - Retaliation

89.    Mr. Chambers adopts and realleges the allegations of all paragraphs in this Complaint in Count III as if fully set forth hereinbelow.

90.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, §42 U.S.C., 2000e-3(a) - retaliation.

91.    Mr. Chambers was discriminated and retaliated against and was subjected to unwelcome harassment on a regular and ongoing basis from the fall of 2021 through his termination from employment on October 13, 2021 and finally on June 30, 2022.

92.    The retaliation was because of his religious beliefs after he was required by Defendants' policies to submit a religious exemption declaration explaining his faith in order to receive an exemption from the experimental COVID-19 vaccination.

93.    The retaliation was so severe and pervasive so as to alter the conditions of the work

environment and resulted in his termination because of his religion.

94.    Mr. Chambers, after making report to his superiors about the unwelcome retaliation and video inquisitions about his faith where he was being questioned, Defendants were on notice of the said unlawful employment practices.  Additionally, the retaliation was so pervasive and severe that there is a presumption that it came to the attention of Defendants and an employee authorized to do something about it and thereby put Defendants on notice.

95.    That Defendants are liable for the religious discrimination and retaliation through the acts and omissions of its employees and/or agents.

96.    The foregoing acts perpetrated against Mr. Chambers by Defendants, constitute acts of unlawful employment practice, in violation of §42 U.S.C., 2000e-3(a).

97.    As a result of the foregoing unlawful employment practices perpetrated against him by Defendants, Mr. Chambers suffered humiliation, emotional distress, physical pain, suffering and has suffered economic losses, which are a direct and proximate result of the foregoing unlawful employment practices.

98.    Mr. Chambers is informed and believes, and thereupon alleges, that the Defendants' conduct as described above was intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Mr. Chambers.  By reason thereof, Mr. Chambers is entitled to the imposition of punitive damages authorized by Title VII of the Civil Rights Act of 1964, amended, in a sum according to proof to be presented at trial.

**WHEREFORE,** Plaintiff Mr. Steven Chambers respectfully requests judgment in his favor and against Defendants, both individually and professionally, for compensatory damages in an amount to be determined by a jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, re-instatement, attorneys fees and punitive damages to the fullest

24

extent allowed by law, and any other relief this Court finds just.

**Count IV – Violation of the Maryland Anti-Discrimination Act Md. Code Ann. State Gov. art. 20-601, *et seq.* and 20-801– Unlawful Employment Practice - Religious Discrimination – Aiding and Abetting (against all Defendants)**

99.     Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

100.    At all times relevant, Defendants were employers within the scope and definition of State Gov. art. 20-601, et seq. and 20-801 (the "Act").

101.    At all times relevant, Mr. Chambers was Defendant's employee within the definition of the Act.

102.    Defendants were managerial or higher employees and agents of Defendant Sheppard Pratt as contemplated by the Act, and at all times relevant to this Complaint, had managerial and supervisory authority over Mr. Chambers in his capacity as an employee of Defendant Sheppard Pratt, and had the authority to make employment and/or hiring and firing personnel file decisions as it related to Mr. Chambers employment with Defendants.

103.    As managerial and supervisory employee and agent of Defendant Sheppard Pratt, individual Defendants with the full knowledge of Defendant Sheppard Pratt, and under the scope of employment, engaged in and/or otherwise permitted the forgoing conduct set forth above.

104.    That Mr. Chambers was subjected to the unwelcome discrimination as set forth above.

105.    Said discrimination was because of Mr. Chambers' religion ("Christian", "Baptist") (including his "religious observances, practice, and belief." MD Code SG 20-601 Definitions (Maryland Code (2023 Edition))).

106.    The discrimination was so severe and pervasive so as to alter the conditions of the

25

work environment by creating a hostile and/or abusive situation including discharge, all in violation of the Act.

107. The individual Defendants were managerial or higher employees and agents of Defendant Sheppard Pratt as contemplated by the Act, and knew or should have known that the harassment and hostile unwelcome discrimination against Mr. Chambers put Defendants on notice of said unlawful employment practices. Additionally, the harassment was so pervasive and severe that there is a presumption that it came to the attention of a Defendant and employees authorized to do something about it and thereby put Defendant Sheppard Pratt and all Defendants on notice.

108. That Defendant Sheppard Pratt is liable for the hostile work environment through the acts and/or omissions of its employees and/or agents.

109. The foregoing acts perpetrated against Mr. Chambers by Defendants constitute acts of unlawful employment practice, in violation of the Maryland Civil Rights Acts, State Government § 20-601, et seq.

110. As a result of the foregoing unlawful employment practices perpetrated against him by Defendants, Mr. Chambers suffered humiliation, emotional distress, physical pain, suffering and has suffered economic losses, which is a direct and proximate result of the foregoing unlawful employment practices.

111. Mr. Chambers is informed and believes, and thereupon alleges, that the Defendants' conduct as described above is intentional, willful, wanton, malicious and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Mr. Chambers is entitled to the imposition of punitive damages, in a sum according to proof at trial.

**WHEREFORE**, Plaintiff, Mr. Steven Chambers, respectfully prays for judgment in his favor and against Defendants, jointly and severally, for compensatory damages in an amount

to be determined including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, reinstatement, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

### Count V – Maryland Human Rights Act 20-601 *et seq.*- Retaliation (against all defendants)

112.    Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

113.    This action is brought pursuant to Md. SG 20-601 et seq.

114.    At all times relevant, Defendant Sheppard Pratt is a "person" within the meaning of Md. SG 20-601 et seq. and was Mr. Chambers' employer as contemplated by Md. SG 20-601 et seq.

115.    At all times relevant, Mr. Chambers was Defendant Sheppard Pratt's employee as contemplated by Md. SG 20-601 et seq.

116.    Defendants, as contemplated by Md. SG 20-601 et seq., at all times relevant to this Complaint had managerial and/or supervisory authority over Mr. Chambers in his capacity as an employee of Defendant Sheppard Pratt, and had the authority to make or inform hiring and firing decisions as it related to Mr. Chambers employment with Defendants.

117.    Defendants, and its managers and agents, with the full knowledge of Defendant Sheppard Pratt, and under the scope of employment, engaged in the forgoing conduct set forth above.

118.    Defendants, by and through its employees and/or agents, suspended and terminated Mr. Chambers as a result of his reporting acts of unlawful employment practices that were being perpetrated against him as set forth above and said suspension/termination was in retaliation for

27

reporting acts of harassment and employment discrimination, constituting a violation of Md. SG 20-601, et seq.

119.    Mr. Chambers, by making report to Defendants as set forth above, put Defendants on notice of said unlawful employment practices. Additionally, the harassment was so pervasive that there is a presumption that it came to the attention of a Defendants or an employee authorized to do something about it and thereby put Defendants on notice.

120.    That Defendants are liable through the acts and/or omissions of its employees and/or agents.

121.    As a direct and proximate result of the acts of retaliation perpetrated against him by Defendants, Mr. Chambers has suffered humiliation, shame, emotional distress, physical pain, economic loss and has suffered the loss of his employment, which is a direct and proximate result of the foregoing retaliation.

122.    Mr. Chambers is informed and believes, and based thereon alleges, that the Defendants' conduct as described above is intentional, willful, wanton, malicious, and done in reckless disregard for his safety and well-being. By reason thereof, Mr. Chambers is entitled to the imposition of punitive damages, in a sum according to proof at trial.

**WHEREFORE**, Plaintiff, Mr. Steven Chambers, respectfully prays for judgment in his favor and against Defendants, jointly and severally, for compensatory damages in an amount to be determined including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

**Count IX – Negligence**
**(against all defendants)**

28

123.    Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

124.    Defendants had a duty to ensure that Mr. Chambers had his health and personnel information protected and that it remained private.

125.    Furthermore, Defendants had a duty to ensure that Mr. Chambers was treated equally with all other employees and not discriminated against or otherwise harassed, demeaned, or subject to public ridicule.

126.    Additionally, Defendants knew or should have known that prompt and immediate action on their part was required to ensure their duties of privacy, equality, civility and a harassment-free work environment was provided Mr. Chambers.

127.    In all of these aforesaid duties, Defendants breached their obligations to Mr. Chambers and caused him significant harm and damage, including emotional damages, in his person, employment and personal property rights.

128.    Particularly, Defendants targeted Mr. Chambers for termination because of his religious faith, caused his great distress in public settings and in fact terminated his from employment, all with knowledge of their duty to ensure a non-hostile work environment and ensure equality and lack of discrimination and privacy of health and personnel files.

129.    But for the negligence of Defendants in failing in their aforementioned duties to Mr. Chambers, being the proximate cause of the harassment, ridicule, discrimination and job termination, no loss of employment would have occurred for Mr. Chambers nor would he have suffered such damage, distress and harm.

130.    Mr. Chambers has directly suffered harm and significant damages because of the

Defendants breach of their aforesaid duties they owed him.

**WHEREFORE**, Plaintiff, Mr. Chambers, respectfully prays for judgment in his favor and against DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined at a trial by jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

### Count X – WRONGFUL DISCHARGE
### (against all defendants)

131. Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

132. Mr. Chambers was unlawfully and wrongfully discharged in violation of the public laws of Maryland's anti-discrimination statutes and, more importantly, the Constitution of Maryland, Decl. of rights, preamble (religious freedom), arts. 24, 36, et seq. and the United States Constitution, amends. I, IX.

133. The termination of Mr. Chambers from his employment by DEFENDANTS was in violation of clear and established public policy and the constitutions of this State, with said religious freedom principles being the oldest constitutional law in the State of Maryland.

134. The nexus between the DEFENDANTS and the decision to terminate Mr. Chambers is direct, constant and complete, as each were agents of the other and each informed the other that they shall not admit into the premises of the employment at Sheppard Pratt the religious Mr. Chambers, and each knew or should have known the said denial of access to employment would cause or influence his termination from employment, and his ridicule, humiliation, and mockery among his colleagues at Sheppard Pratt whom he had worked with for many years.

135.    But for the wrongful termination of Mr. Chambers by DEFENDANTS, being the proximate cause of the harassment, ridicule, discrimination and job termination, no loss of employment would have occurred for Mr. Chambers nor would he have suffered such damage, distress and harm.

136.    Mr. Chambers has directly suffered harm and significant damages because of the DEFENDANTS' breach of their aforesaid duties they owed him.

**WHEREFORE**, Plaintiff, Mr. Chambers, respectfully prays for judgment in his favor and against DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined at a trial by jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

### Count XI – INVASION OF PRIVACY
### (against all defendants)

137.    Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

138.    DEFENDANTS had a duty to ensure that Mr. Chambers had his health and personnel information protected and that it remained private.

139.    DEFENDANTS intruded upon that privacy and seclusion intentionally, knowingly and with purposeful malice because they were in full knowledge and understanding of Mr. Chambers' religious exemption from the COVID-19 "vaccine" and yet demanded his private religious, health, DNA/Genetic and personal information.

140.    This intrusion into his person and privacy was his own domain, and after he declared his religious exemption he should have been respected under the constitutions of

31

Maryland and the United States and the laws of Maryland's employment anti-discrimination Act, but the intrusion occurred anyway by DEFENDANTS.

141.    The intrusion, beyond a declaration of religious exemption and medical decision which had been provided, was and would have been highly offensive to the reasonable person because someone's medical information is known to be private and their religious beliefs are sacred, personal and always to be respected.

142.    No employer may mock, ridicule, or publicly demean and terminate anyone because they are Jewish, Muslim, Christian, Falun Gong, Buddhist, Hindu, Atheist or other religion or non-religion, yet that is what DEFENDANTS did to Mr. Chambers.

143.    Furthermore, DEFENDANTS had a duty to ensure that Mr. Chambers was treated equally with all other employees and not discriminated against or otherwise harassed, demeaned, or subject to public ridicule.

144.    Additionally, DEFENDANTS knew or should have known that prompt and immediate action on their part was required to ensure their duties of privacy, equality and a harassment-free work environment was provided Mr. Chambers.

145.    In all of these aforesaid duties, DEFENDANTS breached their obligations to Mr. Chambers and caused him significant harm and damage, including emotional damages, in his person, employment and personal property rights.

146.    Particularly, DEFENDANTS targeted Mr. Chambers to invade his privacy and solitude and terminate him because of his religious faith, caused him great distress in public settings and in fact terminated him from employment, all with knowledge of their duty to ensure a privacy, equality, a lack of discrimination and privacy.

147.    But for the invasion of privacy by DEFENDANTS in failing in their aforementioned duties to Mr. Chambers, being the proximate cause of the harassment, ridicule,

32

discrimination and job termination, no loss of employment would have occurred for Mr. Chambers nor would he have suffered such damage, distress and harm.

148. Mr. Chambers has directly suffered harm and significant damages because of the DEFENDANTS for invading his privacy and the breach of their aforesaid duties they owed him.

**WHEREFORE**, Plaintiff, Mr. Chambers, respectfully prays for judgment in his favor and against DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined at a trial by jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

<u>**Count XII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>**(against all defendants)**</u>

149. Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

150. DEFENDANTS had a duty to ensure that Mr. Chambers had his health and personnel information protected and that it remained private, and that he was not discriminated against because of his religious faith by providing reasonable accommodations, and by not terminating him because of his faith.

151. DEFENDANTS' conduct in terminating him from employment was intentional and/or reckless, in that they knew or should have known that retaliating against him with discharge/termination after he submitted his religious exemption from the COVID-19 "vaccine" was illegal conduct that would intentionally cause him great distress, harm and emotional distress.

152.    DEFENDANTS' conduct in terminating Mr. Chambers just days after he declared his faith, namely fifty-two days from August 26, 2021 to the termination date of October 13, 2021, demonstrates extreme and outrageous conduct that would shock the conscious of all reasonable Americans who know our country and state were founded upon religious freedom and that the employer knew they had a duty to deliberately and carefully seek to provide reasonable accommodations for his religious faith, and they refused to do so.

153.    But for the wrongful discharge and illegal, humiliating conduct of DEFENDANTS, Mr. Chambers would not have been retaliated against and terminated from his employment.

154.    Mr. Chambers' emotional distress was so severe, having a family with his wife and children, and a complete loss of income, that he was distraught and that his financial situation caused great distress that forced he and his wife to sell their family home and move, disrupting their personal lives forever, and costing him his job and relationships that he had earned and received in familiar trust and professional conduct since he began working for DEFENDANT Sheppard Pratt for some time and had planned to work there until retirement.

155.    This distress was so severe as to disable his very energetic and accomplished person and mental state, where he was actually guiding nuclear defense scientific development, to the extent that he ended up without employment, income, provision for his family, fear of loss of everything he had worked for, forced placing of his personal and real property up for sale which property had unique and sentimental value to his family, and the result was he did in fact lose his reputation, his property and his residence being forced to move.

156.    Furthermore, DEFENDANTS had a duty to ensure that Mr. Chambers was treated equally with all other employees and not discriminated against or otherwise harassed, demeaned, or subject to public ridicule.

34

157.    Additionally, DEFENDANTS knew or should have known that prompt and immediate action on their part was required to ensure their duties of privacy, equality and a harassment-free work environment was provided Mr. Chambers.

158.    In all of these aforesaid duties, DEFENDANTS breached their obligations to Mr. Chambers and caused him significant harm and damage, including emotional damages, in his person, employment and personal property rights.

159.    Particularly, DEFENDANTS targeted Mr. Chambers for termination because of his religious faith, caused him great distress in public settings and in fact terminated him from employment, all with knowledge of their duty to ensure a non-hostile work environment and ensure equality and lack of discrimination.

160.    But for the negligence of DEFENDANTS in failing in their aforementioned duties to Mr. Chambers, being the proximate cause of the harassment, ridicule, discrimination and job termination, no loss of employment would have occurred for Mr. Chambers nor would he have suffered such damage, distress and harm.

161.    Mr. Chambers has directly suffered harm and significant damages because of the DEFENDANTS breach of their aforesaid duties they owed him.

**WHEREFORE**, Plaintiff, Mr. Chambers, respectfully prays for judgment in his favor and against DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined at a trial by jury including but not limited to pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

**Count XIII – CIVIL CONSPIRACY -AND**
**VIOLATION OF THE FIRST AND**
**FOURTEENTH AMENDMENTS**
**And ARTICLE 36 OF THE**

35

**DECLARATION OF RIGHTS OF THE
MARYLAND CONSTITUTION –
RELIGIOUS FREEDOM
(against all defendants)**

162.    Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

163.    DEFENDANTS entered into a contractual and financial AGREEMENT to advance their financial and contractual interests, which included UNITED STATES DEPARTMENT OF LABOR funds for veterans, which were in jeopardy had they not entered into the conspiracy to force vaccination its employees, and through mockery terminate Mr. Chambers while making him stay on to keep the grant and the termination secret so as not to lose the federal grant.

164.    Defendants conspired to violate tortiously Mr. Chambers' First Amendment Free Exercise of Religion rights he possesses in the United States Constitution by willfully and knowingly disregarding his religious exemption and terminating him from employment, but doing so in a civil conspiracy to pretend to keep him on staff in employment in order to maintain Mr. Chambers' veteran's related grants he was managing for the Defendants.

165.    Defendants conspired to violate tortiously Mr. Chambers' Fourteenth Amendment Substantive and Procedural Due Process rights he possesses in the United States Constitution by willfully and knowingly disregarding his religious exemption and terminating him from employment, but doing so in a civil conspiracy to pretend to keep him on staff in employment in order to maintain Mr. Chambers' veteran's related grants he was managing for the Defendants

166.    IN ORDER TO accomplish the unlawful act of terminating Mr. Chambers from employment because he had a religious exemption and opposed FORCED VACCINATION by DEFENDANTS, they agreed together to terminate Mr. Chambers because of his religious exemption from the COVID-19 vaccination, and advanced an unlawful means of intimidation,

harassment and threat of and actual termination from employment under a pretense of accomplishing the legitimate goal of encouraging employees to self-vaccinate. See, *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md.2005). But for the actions of Defendants Mr. Chambers would not have been humiliated and lost his job.

167. The overt acts by DEFENDANTS to advance the conspiracy included their mutual agreement to DENY the religious exemption, DENY entry to Sheppard Pratt, and join together in the tortious conduct and violation of the First and Fourteenth Amendments of the United States' Constitution with the termination of Mr. Chambers because of his religious faith.

168. Even if DEFENDANTS did not enter into an unlawful conspiracy and agreement to violate the Constitutional and Due Process rights of Mr. Chambers under the First and Fourteenth Amendments, they individually and separately did violate the same as to Mr. Chambers and as such must be individually and personally held liable to Mr. Chambers as to each of them individually, and as agents of Sheppard Pratt, each jointly and severally.

169. BUT FOR the DEFENDANTS conspiring together to terminate Mr. Chambers from his employment he would be employed today in this industry and for the same DEFENDANTS.

170. DEFENDANTS, had a duty to ensure that Mr. Chambers had his health and personnel information protected and that it remained private, and that he could freely exercise his religious faith by way of the offered and completed religious exemption which Defendants had at first provided to him, only to outrageously and with malice revoke the same.

171. Furthermore, DEFENDANTS had a duty to ensure that Mr. Chambers was treated equally with all other employees and not discriminated against, harassed, demeaned, or subject to public obloquy and ridicule.

172.    Additionally, DEFENDANTS knew or should have known that prompt and immediate action on their part was required to ensure their duties of privacy, equality and a harassment-free work environment was provided Mr. Chambers.

173.    In all of these aforesaid duties, DEFENDANTS breached their obligations to Mr. Chambers and caused him significant harm and damage in his person, employment and property.

174.    Particularly, DEFENDANTS targeted Mr. Chambers for termination because of his religious faith, caused him great emotional distress in public settings and in fact terminated him from employment, and retaliated against him for his protected activity and religious exemption.

175.    But for the tortious conduct and conspiracy of DEFENDANTS in taking such overt acts of discrimination and violation, while failing in their aforementioned duties to Mr. Chambers, each being the proximate cause of the harassment, ridicule, discrimination and job termination, no loss of employment or harm would have occurred for Mr. Chambers.

176.    The civil conspiracy of DEFENDANTS also includes all other Count violations herein as the Defendants joined together to violate Mr. Chambers' federal, state, common law and Constitutional rights in their scheme to maintain federal grants while terminating Mr. Chambers.

177.    DEFENDANTS are state actors and as such are prohibited from violating the United States and Maryland Constitutions, but they conspired to do so anyway and did in fact perfect their conspiracy with the termination from employment of religious Mr. Chambers.

178.    The history of the Md. Const. Decl. of Rights, Art. 36 (religious freedom) includes the Act of Toleration of September 21, 1649, which protects Mr. Chambers from any supposed "Governor's Order" which permits treble damages against anyone who "directly or indirectly…molest[s] any person…professing to believe in Jesus Christ for **or in respect of his or her religion or the free exercise thereof…[and anyone who does so molest another] shall be compelled to pay <u>treble damages</u> to the party so wronged or molested.**" (Emphasis added).

38

179.    The Md Const. Decl. of Rights, art. 36 (freedom of religion) incorporated similar language of protection for Mr. Chambers' in his rights as against any state action enforcing any supposed "Governor's Order," stating: "no person ought…to be molested in his person…on account of his religious persuasion, profession or for his religious practice…**nothing shall prohibit** or require…belief in…God." (Emphasis added).

180.    Mr. Chambers has directly suffered harm and significant damages because of the DEFENDANTS tortious and unconstitutional actions and breach of these constitutional provisions, committing constitutional torts against him, and of their aforesaid duties they owed him.

**WHEREFORE**, Plaintiff, Mr. Chambers, respectfully prays for judgment in his favor and against DEFENDANTS, jointly and severally, for compensatory damages in an amount to be determined at a trial by jury including but not limited to treble damages, pain and suffering, humiliation, emotional distress, front pay, back pay and interest, personnel file revised to show no negative history whatsoever, attorneys fees and punitive damages to the fullest extent allowed by law, and any other relief this Court deems equitable.

### Count XIV – LOSS OF CONSORTIUM

### (husband and wife)

181.    Mr. Chambers adopts and realleges each and every allegation of his Complaint as though fully set forth herein.

182.    Mr. Chambers, his WIFE Mrs. Kim Chambers, each have a right to each other's society, affection, assistance and, between husband and wife as Mr. and Mrs. Chambers, conjugal fellowship.

183.    DEFENDANTS, because of their intentional and/or negligent actions cited hereinabove and to be set forth at trial, in their actions humiliating, mocking, ridiculing,

39

harassing, directing hostility and ultimately, terminating from employment Mr. Chambers sole income for the family, did harm the Plaintiffs and deny them their consortium and cause loss of the same.

181.    The same occurred in the loss of society and assistance through elimination of financial support from employment, causing the family to be forced to sell their home and move out of state to once again find peace, quiet, enjoyment and society of their own affection.

182.    Each plaintiff was greatly harmed emotionally and incurred loss of property which caused great suffering impacting and causing a loss of said consortium.

183.    Each Plaintiff herein has the common law right to recover for loss of said consortium. *Deems v. Western Maryland Ry. Co.*, 231 A.2d 514, 247 Md. 95 (Md. 1967).

I HEREBY SOLEMNLY AFFIRM, UNDER PENALTY OF PERJURY, THE FOREGOING FACTS AND MATTERS TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

STEVEN CHAMBERS

Respectfully Submitted,

**STEVEN CHAMBERS**

By: _____

Daniel L. Cox
Attorney for Plaintiff
MD Fed Bar #28245
**The Cox Law Center, LLC.**
P.O. Box 545
Emmitsburg, MD 21727
P: 410-254-7000
Fax: (410) 254-7220
dcox@coxlawcenter.com