IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STEVEN CHAMBERS,** *et al.,* | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. SAG-24-02316** |
| | * | |
| **SHEPPARD PRATT HEALTH SYSTEM,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM OPINION</u>

Steven Chambers and his spouse, Kim Chambers, (collectively, "Plaintiffs") filed a Complaint against Mr. Chambers's former employer, Sheppard Pratt Health System ("Sheppard Pratt") and six of its individual officers and employees ("Individual Defendants" or, collectively with Sheppard Pratt, "Defendants"). ECF 1. Defendants have filed a motion to dismiss the complaint for failure to state a claim, ECF 11. Plaintiffs filed an opposition, ECF 19, and Defendants filed a reply, ECF 22. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I.      FACTUAL BACKGROUND

The facts contained herein are derived from Plaintiffs' Complaint and taken in the light most favorable to Plaintiffs as the non-moving party. Mr. Chambers began working for Sheppard Pratt in 2008 as a Veterans Employment Retention Specialist. ECF 1 ¶ 18. Throughout his 14-year employment, most of his work consisted of telephone calls, email, and computer meetings.

*Id.* ¶ 19. He worked 100% remotely in 2021 during the pandemic. *Id.* On or about August 20, 2021, Sheppard Pratt officials sent an email indicating that all employees, including remote workers, would have to receive the COVID-19 vaccine by September 1, 2021. *Id.* ¶ 20. The email stated that, "Governor Hogan shared his latest COVID-19 order that mandated vaccination for all employees across a number of state entities and hospitals, congregate settings, and nursing homes." *Id.* The email directed employees to send "requests for bona fide medical or religious exemptions" to Lauren Rosecrans, the Director of Employee Relations. *Id.* A letterhead policy form stated that employees who receive a medical or religious exemption would be required to submit to "regular COVID-19 testing in lieu of vaccination." *Id.* ¶ 22.

On or about August 23, 2021, Mr. Chambers emailed Ms. Rosecrans to request a religious exemption. *Id.* ¶ 23. Ms. Rosecrans responded that she would forward him an exemption form once it was finalized. *Id.* But on that same date, in light of the upcoming deadline, Mr. Chambers sent Ms. Rosecrans a two-page single-spaced letter detailing his religious exemption request. *Id.* ¶ 24. In relevant part, the letter stated, "All of the currently available COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or testing. As a Christian, I believe and have held my entire life, that life begins at conception and ends at natural death." *Id.* The letter offered support from the Bible and other religious writings before concluding: "Therefore, due to my strong religious beliefes, being vaccinated with any of the currently available COVID-19 vaccines, I would be complying or agreeing with abortion, which is the end of an innocent human life which is a sin against my God, in violation of His Ten Commandments, implying I would be held morally accountable by my God and His consequences." *Id.*

Later that same day, Ms. Rosecrans sent Mr. Chambers Sheppard Pratt's two-page "Religious Exemption from COVID-19 form." *Id.* ¶ 25. The form asked a series of questions,

noted that approval was not guaranteed, and required a religious or spiritual leader to sign certifying that the representations on the form are accurate. *Id.* Mr. Chambers filled out the form, obtained his pastor's signature. and submitted the form that same day. *Id.* ¶¶ 26, 28–29.

On the next day, August 24, 2021, Sheppard Pratt employees sent an email addressing its "vaccine hesitant" employees and noting that additional guidance would be forthcoming. *Id.* ¶ 30. Later that week, another email indicated that unvaccinated staff should schedule their first shot by September 1, 2021 and that unvaccinated staff should "wear a face mask while at work," unless in their own personal office space. *Id.* ¶ 31. That email made no reference to medical or religious exemptions. *Id.* On or about August 27, 2021, Ms. Kendall sent another email stating that all staff had to upload their vaccination card to the state database and that medical or religious exempt employees should write that they are "declining the vaccine and pursuing medical/religious exemption." *Id.* ¶ 32. Mr. Chambers believed, as of August 23, 2021, that his religious exemption had been granted. *Id.* ¶ 33.

However, on October 6, 2021, Mr. Chambers received an invitation to a video meeting with the vice president of Human Resources, his newly assigned supervisor, and another Human Resources Officer. *Id.* ¶¶ 35–36. At the meeting, which occurred on Ocober 7, 2021, the vice president of Human Resources told Mr. Chambers that "Sheppard Pratt will not honor any religious exemptions," citing the risk posed by employees with client-facing positions. *Id.* However, Mr. Chambers knows of other employees who had been granted exemptions. *Id.* ¶ 37. During the meeting, Mr. Chambers's new supervisor, Sarah Norman, repeatedly said "just take the vax." *Id.* ¶ 38. Mr. Chambers was informed during the meeting that if he continued to refuse the vaccine for religious reasons, he would be terminated. *Id.* ¶¶ 38, 39.

Mr. Chambers received a letter, dated October 13, 2021, notifying him that his employment was terminated because of his refusal to take the vaccine. *Id.* ¶¶ 42, 43. However,

around the same time, his supervisor, Ms. Norman, said, "Steve, maybe we will keep you around for another six months" because Sheppard Pratt had not arranged a replacement for his position. *Id.* ¶ 44. On or about October 21, 2021, Ms. Norman offered to host a staff "goodbye party" for Mr. Chambers. *Id.* ¶ 48. He declined. *Id.* Between October 13, 2021 and January 21, 2022, Sheppard Pratt provided no clarity about Mr. Chambers's job security and position. *Id.* ¶ 49. He believed that he was kept in his role so that Sheppard Pratt could retain the grant money Mr. Chambers had obtained from the U.S. Department of Labor ("DOL"). *Id.*

On January 21, 2022, an email to the hospital and veterans' team announced the hiring of James Mastrodomenico, who would take over Mr. Chambers's position. *Id.* ¶ 50. One month later, Ms. Kendall told Mr. Mastrodomenico to email Mr. Chambers and ask to meet "face to face" to be trained for the position and to "deep dive into the grant [process] and the operations of the grant."[1] *Id.* ¶ 51. Mr. Chambers conducted the face-to-face training as directed. *Id.* ¶ 52. On or about March 8, 2022, Mr. Mastrodomenico advised Mr. Chambers by email that he would be trained in formal expenditure reporting in one week and, after that, would assume Mr. Chambers's role. *Id.* ¶ 54

However, on or about March 22, 2022, nearly three weeks later, Mr. Mastrodomenico advised Mr. Chambers that "a new [job] has to be created" in order to get Mr. Mastrodomenico "into a position that will not raise red flags at the" DOL. *Id.* ¶ 55. Mr. Mastrodomenico told Mr. Chambers that Mr. Chambers had to "apply for the new position immediately" and that it would extend his salary and benefits only until June 2022. *Id.* He specified that Mr. Chambers was still

---

[1] This portion of the Complaint is not a model of clarity, as there is a lot of hyperbole making it difficult to understand the facts that Plaintiffs allege occurred. For example, analogizing Sheppard Pratt's request that Mr. Chambers train his replacement to "tyrannical regimes that make its [sic] oppressed people dig their own graves before they are executed and placed in them," *id.* ¶ 53, does not constitute the "short and plain statement of the claim" required by Fed. R. Civ. P. 8.

being terminated. *Id.* The new job description stated that the position was community-based, with time allocated between Mr. Chambers's home office and some "physical activity within the community." *Id.* ¶ 55.

On April 4, 2022, in order to keep his job and benefits for several more months, Mr. Chambers signed the letter accepting the new job. *Id.* ¶ 56. On April 6, 2022, Sheppard Pratt sent an email "congratulating" Mr. Chambers on his new position but reminding him that he was not being offered a contract to remain employed. *Id.* Sheppard Pratt also sent a "revised confirmation letter" of his "new position" which changed his start date to April 1, 2022. *Id.* ¶¶ 57, 58.

On June 30, 2022, when the existing DOL grant was complete and a new grant had to be applied for, Sheppard Pratt revoked Mr. Chambers's pay and benefits and fully terminated his employment. *Id.* ¶ 60. They did not offer him any severance and instructed him to leave his work and work information with Defendants. *Id.*

Mr. Chambers alleges that he suffered emotional distress, actual damages, and pain and suffering from Defendants' actions, and that he and his wife suffered "significant damages for loss of consortium." *Id.* ¶ 67. In November, 2022, Mr. Chambers timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which named "Sheppard Pratt Health System" as his employer and stated, in its entirety:

> I began my employment in October 2008 as a Program Manager. In August 2021, I was notified by my employer that it would be requiring all employees to be fully vaccinated by January 2022. I sincerely hold a religious belief that conflicts with my employers [sic] vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents [sic] Covid-19 vaccination mandate, which was denied. On June 30, 2021 [sic], I was discharged. I believe I was discriminated against because of my religion (Baptist) in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF 11-4. After the EEOC conducted its investigation, Mr. Chambers received a right to sue letter. ECF 1 ¶ 68. This lawsuit ensued.

5

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if…[the] actual proof of those facts is improbable and…recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Ordinarily, courts limit themselves to the four corners of a complaint when deciding a motion to dismiss, although there are some exceptions. First, "courts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015)). Defendants ask this Court to consider Sheppard Pratt's Articles of Amendment and

Restatement (the "corporate charter"), which appears on the website maintained by Maryland's Department of Assessment and Taxation. ECF 11-3. A court may properly take judicial notice of "matters of public record" and other information that, under Federal Rule of Evidence 201, constitute "adjudicative facts." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009); *see* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute because it" "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) ("[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." (internal quotation marks omitted)). This Court finds it appropriate to take judicial notice of the corporate charter as a matter of public record and will construe any facts obtained from it in the light most favorable to Plaintiffs.

Second, federal courts may consider documents incorporated into a complaint by reference without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Specifically, the Court may consider documents attached to motions to dismiss as long as they are "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiffs have not contested the authenticity of the EEOC charge. Although Plaintiffs did not attach the EEOC charge to the Complaint or make specific reference to it (other than referencing the EEOC's proceedings and the issuance of a right to sue letter, *see* ECF 1 ¶¶ 1, 66, 68), the Court may consider the EEOC charge at this stage because Defendants attached it to their motion to dismiss and "[c]ourts commonly consider EEOC charges as integral to a plaintiff's Complaint,

*i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." *Bowie v. Univ. of Md. Med. Sys.*, Civil No. 14-3216-ELH, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) (collecting cases). The EEOC charge may therefore be properly considered at the motion to dismiss stage, without converting this motion into one for summary judgment.

## III.    ANALYSIS

Although Plaintiffs' Complaint is numbered through Count Fourteen, three numbers are skipped, so the Complaint actually consists of eleven counts. For ease of reference, this Court will refer to the counts using Plaintiffs' erroneous numbering. This Court will address each count, grouping them where appropriate. Moreover, this Court notes that for some, but not all, of Plaintiffs' claims, Plaintiffs specify that the count is asserted "against all Defendants." Although other counts do not specify which Defendants are intended to be named, to be comprehensive, this Court will presume in its analysis that each count is asserted against all Defendants.

### A.    Individual Defendant Claims

Defendants are correct that the Title VII and Maryland Fair Employment Practice Act ("MFEPA") claims (Counts I–V) against the Individual Defendants must be dismissed. First and foremost, Mr. Chambers's EEOC charge did not name any of the Individual Defendants as having engaged in discrimination. ECF 11-4. The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004) (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3 124, 132 (4th Cir. 2002)). Suits must be filed only against "the respondent named in the administrative charge," because only named respondents received notice and the opportunity to conciliate the claims voluntarily before suit was filed. *See Memberno v. Atl. Rest. Partners, LLC*, Civil No. 8:19-00369-PX, 2019 WL 3306020, at *5 (D. Md. July 23, 2019) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988). Because the Individual Defendants were not identified as respondents (or even

otherwise mentioned) in the EEOC charge, Mr. Chambers failed to exhaust administrative remedies against those defendants and cannot now sue them for employment discrimination.

Second, even if Mr. Chambers's administrative remedies had been properly exhausted, Title VII and MFEPA claims are not cognizable against individual employees. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding that Title VII does not permit individual liability); *Shabazz v. Bob Evans Farm, Inc.*, 163 Md. App. 602, 629–30 (holding that the term "employer" in the MFEPA does not encompass supervisors). Plaintiffs' attempt to sue the Individual Defendants in their "professional capacities" does not salvage these claims (and, in any event, would only succeed in having the claims against the Individual Defendants treated as claims against Sheppard Pratt). "Official capacity" suits exist in the context of claims where suits against government officials are treated as suits against their employing government agency.[2] *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). No such construct applies in the context of persons employed by private employers. *See, e.g.*, *Nielsen v. Pioneer Bank*, Civil No. 1:15-623-GLS-CFH, 2016 WL 4768798, at *3 (N.D.N.Y. Sept. 13, 2016) (rejecting "official capacity" claim against employees of private employer); *Ellibee v. Leonard*, 226 F. App'x. 351, 357 (5th Cir. 2007) (stating that employees of private companies "had no official capacities in which they could be sued."); *Beck v. FedEx Ground*, Civil No. 7-717-WVS-KJM, 2007 WL 2028581, at *2 (E.D. Cal. July 10, 2007) ("The concept of 'official and/or agency capacity' makes no sense whatsoever in the context of [private employers]."); *DeRay v. Larson*, 283 F. Supp. 2d 706, 709–710 (D. Conn. 2003) ("[I]t is unnecessary to allow a claim against a defendant in his or her official capacity when the entity of which he is an official is capable of

---

[2] Plaintiffs' unmeritorious argument that Sheppard Pratt employees are "quasi-government actors" is addressed in section H below.

being sued directly."). Thus, Plaintiffs' claims against the Individual Defendants must be dismissed.

### B.    Count One – Hostile Work Environment Title VII

Mr. Chambers's first discrimination claim, alleging a hostile work environment, has not been administratively exhausted. His EEOC charge includes no allegations relating to or describing his workplace environment at all. It simply describes the denial of a religious accommodation and the eventual discharge. Because "[t]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible," *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005), the failure to refer to those allegations at all requires dismissal of the claims. *See Fort Bend Cty. v. Davis*, 587 U.S. 541, 548–49 (2019) (noting that administrative exhaustion is "mandatory in the sense that a court must enforce the rule if a party properly raises it" in the Rule 12(b)(6) context).

Even if Plaintiff's hostile work environment claim had been administratively exhausted, moreover, taking all of his allegations as true, the workplace conditions he describes fall far short of the "severe or pervasive" conditions needed to create an abusive work environment. The severe and pervasive element is a "high bar," *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208–09 (4th Cir. 2019). Mr. Chambers has alleged, of course, an unpleasant work environment following his unsuccessful efforts to procure a religious exemption. He describes his supervisors' exhortations to "just take the vax" to keep his job, the unwanted requirement that he train his replacement, and the email to the staff telling them he was being terminated because he had not been vaccinated. But simple mistreatment or rude or unwanted conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and

personality conflict with [one's] supervisor" do not suffice) (internal citations and quotation marks omitted); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment).

Finally, the conduct Mr. Chambers describes as harassing is directly attributable to his decision not to take the vaccine, not to his religion. None of the comments or incidents he alleges referred to his Christian or Baptist faith or his religious beliefs. Harassment on the basis of a decision not to be vaccinated is not "based on the plaintiff's religion" such that it merits Title VII protection. *See, e.g.*, *Stafford v. Acadia Pharm. Inc.*, Civil No. 23-3230-JRR, 2025 WL 754483 (D. Md. Mar. 10, 2025) (noting that "disparaging comments about vaccination status …would not support harassment based on religion"); *Feds. For Med. Freedom v. Garland*, Civil No. 4:23-1817, 2024 WL 1859958, at *8 (S.D. Tex. Apr. 29, 2024) ("Nowhere in Plaintiffs' complaint are there allegations that could lead the Court to conclude that Plaintiffs were harassed because of their religion, rather than their vaccination status"); *Worthy v. Unilever United States, Inc.*, Civil No. 2:23-17570, 2024 WL 3326039, at *8 (D.N.J. July 8, 2024) (noting absence of allegations that plaintiff "was harassed for being a Kemetism follower rather than solely on the basis of his choosing not to receive the COVID-19 vaccine"); *Ziegler v. 3M Co.*, Civil No. 23-292 (DSD/TNL), 2023 WL 4974806, at *4 (D. Minn. Aug. 3, 2023) (dismissing religious harassment claim where plaintiffs alleged harassment consisting of pressure to get vaccinated, denial of exemption requests, and required masking). For all of the above reasons, Mr. Chambers's hostile work environment claim is subject to dismissal.

C.    **Count Two – Religious Discrimination Title VII and Count VI – MD Anti Discrimination Act**

A religious discrimination claim requires a plaintiff to plead facts plausibly suggesting "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. Of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)); *see also Booth v. Maryland*, 337 F. App'x 301, 308–309 (4th Cir. 2009). Plaintiffs' Complaint adequately states a claim for religious discrimination against Sheppard Pratt, and that claim was appropriately exhausted through his EEOC charge. Although Sheppard Pratt argues that Mr. Chambers was permitted to stay on the job and then eventually terminated because of the end of the DOL grant, the parties clearly espouse divergent views that amount to a quintessential dispute of fact. Whether Mr. Chambers was "terminated" in June 2022 or well before that when he alleges the decision was made is a question of fact for the jury. Mr. Chambers's claim that he was terminated on the basis of his religious beliefs will therefore proceed to discovery.

Similarly, Mr. Chambers's related claim for failure to accommodate his religion under Title VII will proceed to discovery. That claim, like the religious discrimination claim, requires a plaintiff to plead, and ultimately show, that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v*, 101 at 1019 (citations omitted). The same factual dispute, regarding

whether or not Mr. Chambers was fired for his failure to get the vaccine, is present as to the failure to accommodate claim.

Finally, this Court construes Count IV to state a religious discrimination claim under the MFEPA, and it survives the motion to dismiss for the same reason. However, to the extent Mr. Chambers tries to allege that the Individual Defendants "aided and abetted" the MFEPA violation, Defendants correctly note that there is no private right of action for such a claim. As Plaintiffs have not rebutted that point, the "aiding and abetting" aspect of the MFEPA claim is dismissed. Counts Two and Four will otherwise proceed to discovery against Sheppard Pratt only.

### D.    Count Three – Retaliation Title VII and Count V – Retaliation Maryland Human Rights Act

Like with his hostile work environment claim, Mr. Chambers's EEOC charge does not reference retaliation. In such circumstances, for his retaliation claim to be considered exhausted, "the narrative of the charge must either (1) specifically allege or describe retaliation; or (2) show that the retaliation was a "kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the commission." *Teasdell v. Baltimore Cty. Bd. of Educ.*, Civil No. EDQ-13-0107, 2013 WL 4804736, at *4 (D. Md. Sept. 6, 2013) (quoting *Johnson v. Portfolio Recovery Assoc.*, 682 F. Supp. 2d 560, 571, 573 (E.D. Va. 2009)). It should be noted that Mr. Chambers did not file his EEOC charge until November 2022, months after his employment was terminated, meaning that his involvement with Sheppard Pratt had ended and he could have included any allegations of retaliation in his EEOC complaint. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 704 (D. Md. 2003) ("[A] plaintiff must exhaust her administrative remedies in order to properly file a civil suit when the alleged retaliation could have been raised in the original EEOC complaint.").

Because Mr. Chambers's EEOC charge makes no reference to retaliation or any of the facts he suggests were retaliatory, the claim has not been exhausted and must be dismissed.

### E.    COUNT IX – Negligence and Count X – Wrongful Discharge

These two state law claims are subject to dismissal. The well-established elements of a negligence claim under Maryland law require that a plaintiff prove that the defendant owed a duty to protect the plaintiff from injury, that the defendant breached the duty, that there was a causal relationship between the breach and harm suffered by the plaintiff, and that damages resulted. *See Warr v. JMGM Group, LLC*, 433 Md. 170, 181 (2013). The duty Mr. Chambers alleges, "to ensure that Mr. Chambers was treated equally with all other employees and not discriminated against or otherwise harassed, demeaned, or subject to public ridicule" ECF 1 ¶ 125, arises out of the requirements of the federal and state discrimination statutes.[3] "If a count does nothing more than duplicate a count brought under Title VII or the [MFEPA] then that count should be dismissed." *Rachel-Smith v. FTData, Inc.*, 202 F. Supp. 2d 400, 404 (D. Md. 2002). Mr. Chambers's negligence claim simply duplicates his Title VII and MFEPA claims and it therefore must be dismissed.

Similarly, Mr. Chambers's claim for wrongful discharge is preempted by his statutory remedies for the identical conduct. The elements of wrongful discharge are (1) a discharge that (2) violated a clear mandate of public policy, with (3) a nexus between the employee's conduct and the employer's termination decision. *King v. Marriott Inter. Inc.*, 160 Md. App. 689, 700 (2005). Recovery under a wrongful discharge theory is not available where statutory remedies exist. *See Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 773 (Md. 1990) (rejecting a wrongful

---

[3] Plaintiffs also allege that Defendants "had a duty to ensure that deal with "duty that Mr. Chambers had his health and personnel. information protected and that it remained private" ECF 1 ¶ 124. He has neither cited any source of that duty nor facts plausibly establishing that Defendants disseminated private health and personnel information, resulting in damages to Mr. Chambers.

discharge claim where the individual was able to "pursue a remedy under both the state and federal anti-discrimination statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices"). Accordingly, a wrongful discharge claim cannot be maintained for discriminatory conduct also prohibited by Title VII, or any other federal or state statute relating to employment discrimination. Here, if Mr. Chambers was wrongfully terminated because of the conduct he alleges, recovery will be available through his federal and state discrimination claims. His wrongful discharge claim is therefore subject to dismissal.

### F.    Count XI – Invasion of Privacy

Count XI is subject to dismissal for failure to meet the requirements of Rule 8 for a "short and plain statement of the claim." Having carefully reviewed the Complaint, this Court cannot ascertain what alleged invasion of privacy Mr. Chambers alleges and what the facts underlying the claim are.

The elements of an invasion of privacy claim are (1) an intentional intrusion upon solitude, seclusion, or private affairs that (2) would be highly offensive to a reasonable person. *See Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 163 (1986); *Neal v. United States*, 599 F. Supp. 3d 270, 306 (D. Md. 2022). The contours of Mr. Chambers's claim are unclear. He appears to be taking the position that Sheppard Pratt had to exempt him from its vaccine requirement without requiring him to provide any information at all about his religious beliefs or even whether or not he took the vaccine. But evaluating the factual basis for a requested exemption would not be highly offensive to a reasonable person. And his allegations then venture back into discrimination, hostile work environment, and unlawful termination allegations, which are not pertinent to a claim for invasion of privacy. ECF 1 ¶¶ 142–147. In total, the allegations in the Complaint do not state a plausible invasion of privacy claim.

16

### G.    Count XII – Intentional Infliction of Emotional Distress

Count XII alleges intentional infliction of emotional distress (IIED). In Maryland, an IIED claim requires four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). The extreme and outrageous element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). Liability does not extent to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). "As inappropriate…as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, so as to reach the high threshold invariably applicable to a claim of intentional inflicton of emotional distress under Maryland law." *Airbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).

Mr. Chambers's factual assertions fall far short of "extreme and outrageous" conduct "beyond all possible bounds of decency." While, as noted above, Mr. Chambers has adequately stated certain discrimination claims, workplace discrimination does not in and of itself amount to the extreme and atrocious conduct required to state an IIED claim. The conduct alleged by Mr. Chambers is comparable to that involved in other workplace discrimination scenarios that have been deemed insufficient to overcome the high bar. *See Ritter v. Bd. of Educ. of Arcadia Loc. Sch.*, 535 F. Supp. 3d 690, 696 (N.D. Ohio 2021) (denial of a teacher's requested accommodations for her mental health conditions was not extreme and outrageous); *Cardiel v. World Wide Tech.*

*Holding Co.*, Civil No. 11-256, 2011 WL 3047712, at *3 (W.D. Tex. July 22, 2011) (denial of a warehouse employee's request for "light duty" accommodation following a serious illness was not extreme and outrageous); *Arbabi*, 205 F. Supp. at 466 (dismissing IIED claim where plaintiff alleged she "was continually subjected to derogatory remarks based upon her sex as a female, her religion as a Muslim, and her national origin as an Iranian"); *accord, e.g.*, *Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.*, Civil No. TDC-14-00525, 2015 WL 2090654, at *9 (D. Md. May 4, 2015) (dismissing IIED claim where plaintiff alleged employer denied her FMLA leave, ignored "other requests for time off, gave better shifts, more clerical assistance, and more feedback to white employees, shut the door on [plaintiff], took personal credit for [plaintiff's] work, and eventually fired her"); *Murphy v. Republic Nat. Distrib. Co., LLC.*, Civil No. JFM-13-02758, 2014 WL 4406880, at *7 (D. Md. Sept. 5, 2014) (dismissing IIED claim where plaintiff alleged he was "routinely subjected to derogatory comments about his age"); *Lauture v. St. Agnes Hosp.*, Civil No. CCB-08-00943, 2009 WL 5166253, at *12 (D. Md. Dec. 29, 2009) (dismissing IIED claim based on employer directing security to escort employee out of the building), *aff'd*, 429 F. App'x 300 (4th Cir. 2011).

Finally, the inevitable distress resulting from being the victim of employment discrimination does not satisfy the lofty requirement to plead a "severely disabling emotional response" amounting to an inability to function on a daily basis. The facts Mr. Chambers pleads relate largely to the fact that he had to sell his family home and move his family, not to any incapacitating emotional response to the workplace events. ECF 1 ¶¶ 154, 155. Mr. Chambers has not pleaded that he has had any mental illness or has required mental health treatment. His non-specific references to being "distraught" or under "great distress" do not meet the high bar required to state a plausible IIED claim, even if he had otherwise successfully pleaded the other elements.

**H.      Count XIII – Civil Conspiracy and state and federal constitutional claims**

Count XIII is subject to dismissal for its failure to abide by Local Rule 103.1(c), requiring that a complaint "set forth each count separately and provide a clear statement of the supporting facts for each count." Count XIII appears to be a hodgepodge of conspiracy allegations and allegations that Sheppard Pratt and its employees violated Mr. Chambers's constitutional rights. Mr. Chambers's civil conspiracy claim is a nonstarter, as it alleges a conspiracy between an employer and its employees. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("[U]nder the intracorporate immunity doctrine, acts of corporate agents are the acts of the corporation itself and corporate employees cannot conspire with each other or with the corporation."); *see also Balt.-Wash. Tel. Co. v. The Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 744 (D. Md. 2008).

To the extent that Count XIII could be read to assert independent constitutional claims, those claims would also be subject to dismissal because the named Defendants are not state actors. While Plaintiffs "demand discovery" in their response to this Count, ECF 19 at 15, they are not entitled to discovery unless they have pled a plausible, viable claim. Their conclusory assertion that "Defendants are state actors" in ¶ 177 of the Complaint does not explain or allege how Defendants qualify as state actors. Moreover, that assertion is unsupported either by the facts alleged in the Complaint or by case law. Plaintiff suggests that Sheppard Pratt's implementation of the Governor's vaccine mandate suffices to create the nexus between Sheppard Pratt and government action. This Court disagrees. *See Menk v. MITRE Corp*., 713 F. Supp. 3d 113 (D. Md. 2024) (finding that "the mere fact that Defendant relied on the Executive Order and instituted the policy in order to support the executive branch is insufficient to allege government action or the requisite nexus between MITRE's challenged activity and action by

government officials"); *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007) (affirming district court's denial of the plaintiff's complaint under 12(b)(6) where the plaintiff argued that a cable television operator should be considered a state actor "because [the operator] and city worked 'hand-in-glove' to enact new regulations" because although some television "channels were subject to both federal and state regulation, ... this alone did not convert [the cable operator's] private action into state action") (internal quotation marks and citation omitted); *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 802 (W.D. Tenn. 2022) (explaining that "[t]he mere fact that Tyson relied on OSHA and CDC guidance in formulating its vaccine policy does not make either [d]efendant an agent of the government. Nor does the fact that Tyson is subject to the federal government's COVID-19 guidance for meat and poultry plants convert [d]efendants into government actors") (internal quotation marks omitted).

Plaintiffs alternatively suggest that Sheppard Pratt's receipt of government funding creates the requisite government nexus to transform them into "quasi-government" or state actors. That argument is equally unavailing. *See, e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358 (1974) (finding that "a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory," was not a state actor); *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (concluding that a private nursing home was not a state actor despite extensive regulation and 90% of fees sourced from state); *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802, 814–15 (2019) (explaining that "[n]umerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities.").

Sheppard Pratt's corporate charter establishes that it is a private entity and not a state actor. ECF 11-3. Accordingly, even if Count XIII had adequately pleaded a constitutional claim, it would be subject to dismissal.

## I.    Count XIV – Loss of Consortium

An action for loss of consortium in Maryland is "comprised of two elements: (1) injury to the marital relationship, which is (2) caused by the wrongful conduct of the defendant." *French v. Hines*, 182 Md. App. 201, 267 (2008). A loss of consortium claim is preempted by, and cannot be based upon, federal statutory civil rights violations. *See, e.g.*, *Brown v. Youth Servs. Int'l of Baltimore, Inc.*, 904 F. Supp. 469, 470 (D. Md. 1995) (collecting cases showing that "the federal courts almost unanimously have dismissed loss of consortium claims based upon federal civil rights violations."). Permitting such a claim would "append to the statutory remedial scheme a common law remedy not recognized by" Congress. *Id.*

Even as to the state law discrimination-based claim, however, the allegations set forth in the Complaint do not state a claim for "injury to the marital relationship." Instead, the Complaint alleges that the financial impact to Mr. Chambers caused the family to have to sell their home and move out-of-state, and that "each plaintiff was greatly harmed emotionally and incurred loss of property." ECF 1 ¶¶ 181–82. These factual allegations do not describe an injury to the marital relationship between husband and wife. Accordingly, the count must be dismissed for failure to state a claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 11, will be DENIED as to Counts II and IV, stating religious discrimination claims and failure to accommodate under Title VII against Sheppard Pratt, and GRANTED without prejudice as to all

other counts, including all of the claims against the Individual Defendants. A separate Order follows.

Dated: April 29, 2025                                         _____/s/_____
                                                              Stephanie A. Gallagher
                                                              United States District Judge